**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| IN RE:<br><br>COLTON AND STEPHANIE OSBORN,<br><br>Debtors. | CASE NO. 24-40202-BSK<br>CHAPTER 12<br>(Jointly Administered)<br><br>**MOTION TO CONDUCT<br>RULE 2004 EXAMINATIONS** |
| IN RE:<br><br>C & S AG, LLC,<br><br>Debtor. | |
| IN RE:<br><br>C & S ORGANICS, LLC,<br><br>Debtor. | |

FarmCo Financial, LLC, as the loan servicer for Cavatica Asset Participation Master Trust, the successor in interest to FarmOp Capital, LLC ("**FarmCo**"), a creditor and party-in-interest, by and through counsel, moves the Court for an order allowing it to conduct Rule 2004 examinations in these jointly administered bankruptcy cases filed by Colton L. Osborn ("**CO**"), Stephanie L. Osborn ("**SO**," and together with CO, the "**Osborns**"), C & S Organics, LLC ("**C & S Organics**"), and C & S Ag, LLC ("**C & S Ag**," hereinafter, the Osborns, C & S Organics and C & S Ag may be referred to collectively as the "**Debtors**").

As set forth below, FarmCo is requesting permission to (A) obtain documents from one or more of the Debtors and examine one or more of the Debtors; (B) obtain documents from Kevin and Teresa Osborn and examine Kevin and/or Teresa Osborn;

1

(C) obtain documents from Linear Accounting, LLC, First Interstate Bank, Stockmens Bank, O'Hanlon Seed, Inc., Sunrise Foods International (USA), Inc., The Andersons, Inc., KAM Ag Services, LLC, Agrifund, LLC, Beck's Superior Hybrids, Inc., M2 Equipment Finance, LLC, Western Equipment Finance, Inc., North Mill Equipment Finance, LLC, Altus Receivables Management, Inc., The Home Agency, Inc., and Hastings Ag, L.L.C.

In support of this motion, FarmCo states as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is FED. R. BANKR. P. 2004.

2. As of March 8, 2024, Debtors, jointly and severally, owe FarmCo not less than $1,057,476.13 (the "**Indebtedness**").

3. To secure the Indebtedness they owe FarmCo, Debtors granted FarmCo a security interest in the following assets Debtors own (collectively, and as more fully described in the applicable loan documents, the "**Collateral**"): inventory, equipment, machinery, farm products, crops, livestock, chattel paper, accounts, deposit accounts, government payments, government agricultural program payments, incentive payments, investment property, instruments, documents, commercial tort claims, letter of credit rights, supporting obligations, contract rights, general intangibles, furniture, and proceeds. FarmCo properly perfected its security interest in the Collateral by filing a UCC-1 financing statement with the Nebraska Secretary of State on February 19, 2021.

4. Pre-petition, Debtors defaulted on their obligations owed to FarmCo.

2

5.  Throughout the Debtors' relationship with FarmCo, Debtors have not been forthcoming about their assets and liabilities, and have failed to disclose to FarmCo important information relating to their farming operation and financial circumstances. Among other things, Debtors have not accounted for all of their grain harvested in years 2021 through 2023. In addition, Debtors have sold certain of FarmCo's Collateral – without FarmCo's consent – and without delivering the proceeds of such sales to FarmCo.

6.  Bankruptcy Rule 2004 provides that, upon a motion of a party in interest, the Court may order the examination of any entity concerning "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b).

7.  Bankruptcy Rule 2004 is intended to give parties in interest an opportunity to examine those persons possessing knowledge of a debtor's acts, conduct or financial affairs and provides "all interested parties with a mechanism for the investigation and reconstruction of the debtor's affairs." *In re Isis Foods, Inc.*, 33 B.R. 45, 46 n.2 (Bankr. W.D. Mo. 1983) (citation omitted).

8.  "Rule 2004 allows the court to authorize the examination of any entity on the motion of any party in interest. Fed. R. Bankr. P. Rule 2004(a). The scope of such an examination is quite broad, relating to just about anything that deals with the debtor's actions, assets, liabilities or financial affairs, its right to a discharge, or any matter affecting the administration of the bankruptcy estate. Fed. R. Bankr. P. Rule 2004(b). It can be as simple as where are the keys to the filing cabinet or as complex as what happened to the money? It may also be used to examine 'creditors and third parties who have had dealings

with the debtor.'" *In re Sheetz*, 452 B.R. 746, 747–48 (Bankr. N.D. Ind. 2011) (citing *Matter of Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)).

9. The attendance for examination and for the production of documents may be compelled as provided in Bankruptcy Rule 9016, which incorporates Federal Rule of Civil Procedure 45 into cases under the Bankruptcy Code. *See* FED R. BANKR. P. 2004(c).

10. FarmCo, as a secured creditor owed over $1 million by Debtors, is an interested party entitled to conduct Rule 2004 examinations to investigate the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b).

11. In order to hold effective examinations, FarmCo requests Debtors be required to produce the documents and information listed on **Exhibit A** attached hereto and incorporated herein by reference within 14 days of the date of this Court's order granting this motion. Additionally, FarmCo requests that Debtors be required to appear for their Rule 2004 examinations within 21 days of the date of this Court's order granting this motion.

12. Kevin and Teresa Osborn are CO's parents, and Debtors' bankruptcy schedules indicate they owe Kevin and Teresa Osborn $600,000 and the debt is secured by certain real estate and Debtors' personal property. This insider loan and any and all other business dealings between Kevin and Teresa Osborn and the Debtors – and any payments Debtors have made to Kevin and Teresa Osborn and/or any assets that have been transferred between the parties – needs to be strictly scrutinized. Accordingly,

FarmCo requests permission to issue subpoenas on Kevin and Teresa Osborn to produce documents related to their business dealing with Debtors and appear for a deposition.

13.     According to the Debtors' statements of financial affairs, Linear Accounting LLC ("**Linear**") has maintained the Debtors' books, records and financial statements. Accordingly, Linear may have some or all of the documents and information listed on **Exhibit A** attached hereto.

14.     Upon FarmCo's best information and belief, and based on Debtors' bankruptcy schedules, Debtors maintain bank accounts at First Interstate Bank and Stockmens Bank.  Debtors' bank account records – including but not limited to account statements, checks, deposited items, wire transfer information, ACH transfer information, and other electronic funds transfer information – may assist FarmCo in identifying the disposition of its Collateral.

15.     Upon FarmCo's best information and belief, pre-petition and potentially post-petition, one or more of the Debtors sold grain and/or crops grown in 2021, 2022 and 2023 to O'Hanlon Seed, Inc. ("**O'Hanlon**"), Sunrise Foods International (USA), Inc. ("**Sunrise**"), The Andersons, Inc. ("**Andersons**"), and/or KAM Ag Services, LLC ("**KAM**"). Records from O'Hanlon, Sunrise, Andersons and KAM regarding grain and/or crop purchases and sales from Debtors and/or their related entities may assist FarmCo in identifying the disposition of FarmCo's Collateral.

16.     Upon FarmCo's best information and belief, Debtors have recently done business with and/or obtained credit from Agrifund, LLC ("**ARM**"), Beck's Superior Hybrids, Inc. ("**Beck's**"), M2 Equipment Finance, LLC ("**M2**"), Western Equipment Finance, Inc. ("**WEF**"), North Mill Equipment Finance, LLC ("**NMEF**") and Altus

Receivables Management, Inc. ("**Altus**"). Accordingly, these entities may have information regarding the Debtors' financial situation, including but not limited to credit applications, payment histories, and/or information regarding Debtors' receivables.

17. Upon FarmCo's best information and belief, Debtors maintain their crop insurance and their property and casualty insurance through The Home Agency, Inc. As a result, The Home Agency, Inc. may have information regarding Debtors' financial situation and/or Debtors' assets and liabilities.

18. Upon FarmCo's best information and belief, Debtors may have sold certain equipment to Hastings Ag, L.L.C. without FarmCo's consent and without delivering any sale proceeds to FarmCo.

WHEREFORE, FarmCo requests that the Court grant its motion and enter an order providing that:

A. The Debtors, and each of them, are required to produce the documents set forth on **Exhibit A** attached hereto to FarmCo's counsel within 14 days of the date of this Court's order;

B. The Debtors, and each of them, are required to appear for a Rule 2004 examination at the law office of Debtors' counsel – or such other location as FarmCo and Debtors may agree – within 21 days of the date of this Court's order;

C. FarmCo is authorized to issue a subpoena on Kevin and Teresa Osborn to produce documents related to their business dealing with Debtors and appear for a deposition at the law office of their counsel or such other location as FarmCo and Kevin and Teresa Osborn may agree;

D.      FarmCo is authorized to issue a subpoena duces tecum on Linear to produce any and all of the documents set forth on **Exhibit A** attached hereto;

E.      FarmCo is authorized to issue a subpoena duces tecum on First Interstate Bank and Stockmens Bank requiring said banks to produce, among possibly other things, copies of bank account statements, checks, deposited items, wire transfer records, electronic funds transfers records, and related records for accounts owned or co-owned by any one or more of the Debtors and their related entity Osborn Land & Cattle, LLC from the year 2021 to the present;

F.      FarmCo is authorized to issue a subpoena duces tecum on O'Hanlon, Sunrise, Andersons and KAM requiring each of them to produce records regarding or related to grain and/crop purchases from the Debtors from the year 2021 to the present;

G.      FarmCo is authorized to issue a subpoena duces tecum on ARM, Beck's, M2, WEF, NMEF and Altus requiring each of them to produce records related to their business dealings with Debtors, including but not limited to credit applications, payment histories, and/or information regarding Debtors' receivables;

H.      FarmCo is authorized to issue a subpoena duces tecum on The Home Agency, Inc. requiring it to produce records related to any and all insurance policies, claims and/or other related information for all policies maintained

by one or more of the Debtors and/or their related entity, Osborn Land & Cattle, LLC, from 2021 through present;

I. FarmCo is authorized to issue a subpoena duces tecum on Hastings Ag, L.L.C. requiring it to produce records related to any and all equipment sales and/or purchasers in any way related to one or more of the Debtors and/or their related entity, Osborn Land & Cattle, LLC, from 2021 through present; and

J. FarmCo be granted such other and further relief as is just and equitable.

DATED this 3rd day of April, 2024.

FARMCO FINANCIAL, LLC, Creditor and Interested Party,

By: s/Brandon R. Tomjack
Brandon R. Tomjack  (NE #22981)
of    BAIRD HOLM LLP
1700 Farnam St, Ste 1500
Omaha, NE  68102-2068
Phone: 402-344-0500
btomjack@bairdholm.com

# EXHIBIT A

## Definitions

**Osborn Parties** – The term "Osborn Parties" shall mean Colton Osborn, Stephanie Osborn, C & S Organics, C & S Ag, LLC and/or Osborn Land & Cattle, LLC.

**Correspondence** – The term "Correspondence" shall include any and all emails, text messages, letters, notes, instant messages, social media messages or communications (i.e. Facebook or Instagram), faxes, memorandums, transcripts or notes of telephone or in person conversations, and any other notation, electronic or otherwise, conveying any type of communication.

**Documents** – The term "Documents" shall mean, without limitation, the following items, whether printed, written, or produced by hand: all original written recorded, or graphic matters whatsoever and all non-identical copies, thereof, including but not limited to, papers, books, records, letters, photographs, slides, tangible things, correspondence, communications, telegrams, cables, telex messages, memoranda, notes, notations, work papers, transcripts, cables, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, bulletins, notices, announcements, advertisements, instructions, charts, manuals, brochures, publications, schedules, price lists, client lists, journals, statistical records, desk calendars, appointment books, diaries, lists, tabulations, books of account, receipts, records and invoices reflecting business operations, sound recordings, computer print-outs, "Web Sites" on the "Internet," "e-mail" communications, all records kept by electronic or intangible means, photographic means or mechanical means, any notes, computer print outs, books of account, receipts, records and invoices reflecting business operations, all records kept by electronic, photographic, or mechanical means, any notes or drafts relating to the foregoing, and all things similar to any of the foregoing. In all cases where originals are not available, "document" also means identical copies of original documents and non-identical copies thereof.

## Documents to Produce

1. A list of all landlords of any of the Osborn Parties in 2021, 2022 and 2023, including each respective landlord's name, address, phone number, email address;

2. Any and all leases, farming agreements and/or custom farming agreements entered into by and between any one or more of the Osborn Parties and any other person or entity in years 2021, 2022, and 2023;

3. A list and description of all land rented by any of the Osborn Parties in 2021, 2022 and 2023, including the identity the landlord for each tract, the number of acres of each tract, and the address or other identifying information (e.g., intersection of county roads) of each tract of land;

9

4. Any and all Documents or Correspondence relating to FSA certifications of crop acres and/or yields, FSA-578 forms, and any other FSA-related documents or records regarding crops grown by any or all of the Osborn Parties in 2021, 2022, and 2023;

5. Any or all of the Osborn Parties' 2021, 2022, and 2023 crop insurance applications and/or policies;

6. Any and all Documents or Correspondence related to, regarding and/or evidencing any and all USDA government program payments any or all of the Osborn Parties received in year 2021, 2022, and 2023;

7. Any and all Documents or Correspondence related to, regarding and/or evidencing any and all loans the United States Small Business Administration made to any or all of the Osborn Parties in year 2021, 2022 and/or 2023;

8. Any and all leases or farm agreements for land where any or all of the Osborn Parties' 2021, 2022, and 2023 crops were grown;

9. Any and all leases or farm agreements for land where any or all of the Osborn Parties' 2021, 2022, and 2023 harvested grain was and/or is stored;

10. Any and all scale tickets regarding or related to the storage, hauling, delivery, sale or any other disposition of grain owned by any or all of the Osborn Parties from January 1, 2021 to the present;

11. Any and all Documents identifying all payments made by any or all of the Osborn Parties to any landlord in 2021, 2022 and 2023 relating to any or all of the Osborn Parties' lease of any real property for any agricultural use, including but not limited to tillable ground and pasture ground, or the storing of crops;

12. Any and all Documents or Correspondence regarding or related to any one or more of the Osborn Parties' purchase or sale of any livestock from January 1, 2021 to the present, including but not limited to bills of sale, invoices, payments, feed bills, yardage costs, labor, veterinary costs, and insurance;

13. Any and all Documents identifying any or all of the Osborn Parties' purchases of inputs for 2021, 2022 and 2023 farming operations, including but not necessarily limited to crop operations and/or raising livestock;

14. Any and all Documents identifying any or all of the Osborn Parties' payments for inputs and/or expenses for 2021, 2022 and 2023 farming operations, including but not necessarily limited to crop operations and/or raising livestock;

15. Any and all Documents identifying any livestock owned by any of the Osborn Parties from January 1, 2021, through the present, including but not limited to transfer of ownership documentation, bills of sale, share lease agreements,

consignment agreements, or any other agreements with respect to the ownership or care of any livestock;

16. Any and all Documents or Correspondence related to, regarding and/or evidencing all sales and/or purchases of any or all of the Osborn Parties' grain or crops in 2021, 2022 and 2023, including but not limited to purchase and sale agreements, forward contracts, settlement statements, scale tickets, checks, receipts or other documentation from purchasers or sellers, and contracts with brokers for the purchase and/or sale of grain or crops;

17. Any and all Documents or Correspondence identifying, summarizing, and/or related to any of the Osborn Parties' production and/or sale of any crops in 2021, 2022 and 2023, including but not limited to Correspondence regarding landlords, leased ground, the purchase and/or application of inputs, the payment of operating expenses, the location of any crops, the harvest of any crops, and the hauling of any crops;

18. A copy of any and all Correspondence identifying, summarizing, and/or related to any of the Osborn Parties' purchase, sale, hauling, care and/or feeding of any livestock in 2021, 2022 and 2023;

19. Any and all Documents or Correspondence related to, regarding and/or evidencing any money any or all of the Osborn Parties borrowed in connection with one or more of their 2021, 2022 and 2023 farming operations, including but not limited to loan applications, loan approval letters and loan documents;

20. Any and all documents related to, regarding and/or evidencing any debts or other monetary obligations any or all of the Osborn Parties owe and/or have owed to any other party from January 1, 2021 to the present;

21. Any or all of the Osborn Parties' tax returns, along with all schedules and related working papers, for calendar years 2020, 2021, 2022 and 2023 or for any tax year including January 1, 2020 to present;

22. Any or all of the Osborn Parties' Schedule K-1s for calendar years 2020, 2021, 2022 and 2023 or for any tax year including January 1, 2020 to present;

23. Any or all Documents or Correspondence related to the depreciation of the Osborn Parties' machinery, equipment, farm implements, titled vehicles, racing cars, recreational vehicles or aircraft from January 1, 2021, through the present;

24. Any or all Documents or Correspondence produced by the Osborn Parties in preparation for the tax returns for calendar years 2020, 2021, 2022 and 2023 or for any tax year including January 1, 2020 to present;

25. Any and all financial statements of any or all of the Osborn Parties from January 1, 2021 to present, including but not limited to balance sheets, income statements

11

and cash flow statements, and any and all working papers or supporting documentation related thereto;

26. Any and all projected financials of any or all of the Osborn Parties from January 1, 2021 to present, including but not limited to projected income statements and cash flow statements, and any and all working papers or supporting documentation related thereto;

27. Any and all Documents or Correspondence related to all equipment, machinery, farm implements, titled vehicles, racing cars, recreational vehicles and aircraft owned by any or all of the Osborn Parties, including but not limited to certificates of title; and

28. Any and all Documents or Correspondence related to the sale of any one or more of the Osborn Parties' machinery, equipment, farm implements, titled vehicles, racing cars, recreational vehicles or aircraft from January 1, 2021, through the present, including but not limited to contracts, bills of sale, and checks or payments received.

## CERTIFICATE OF SERVICE

    I hereby certify that on April 3, 2024, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to the following:

**Andrew R. Biehl**
abiehl@walentineotoole.com
bfoley@walentineotoole.com

**Bradley D. Holbrook**
bradh@jacobsenorr.com

**Jerry L. Jensen**
ustpregion13.om.ecf@usdoj.gov

**Craig A. Knickrehm**
cknickrehm@walentineotoole.com
jellis@womglaw.com

**John A. O'Brien**
jobrien@spencerfane.com
anissly@spencerfane.com
lwhitaker@spencerfane.com

**James A. Overcash**
trustee@woodsaitken.com
kdey@woodsaitken.com
lreddish@woodsaitken.com
12trustee@woodsaitken.com
ne13@ecfcbis.com
trustee@woodsaitken.com

**Matthew D Pederson**
matt@pedersonlawoffice.net
tara@pedersonlawoffice.net

**Tad Ruliffson**
truliffson@outdoorbank.com

**Michael R. Snyder**
msnyder@snyderandhilliard.com

**Patrick Raymond Turner**
pturner@turnerlegalomaha.com
turnerpr97408@notify.bestcase.com

**Michael J. Whaley**
MWhaley@clinewilliams.com
tcampbell@clinewilliams.com

                                              s/Brandon R. Tomjack

6323405.2