# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| C&S AG, LLC ) | Case No. BK 24-40200 |
| ) | |
| Debtors. ) | Chapter 12 |
| | |
| IN RE: ) | |
| ) | |
| C&S ORGANICS, LLC ) | Case No. BK 24-40201 |
| ) | |
| Debtors. ) | Chapter 12 |
| | |
| IN RE: ) | |
| ) | |
| STEPHANIE OSBORN and ) | Case No. BK 24-40202-BSK |
| COLTON OSBORN ) | |
| ) | Chapter 12 |
| Debtors. ) | |
| ) | Jointly Administered Under |
| ) | Case No. Bk 24-40202 |

## STOCKMENS BANK'S OBJECTION TO SECOND AMENDED PLAN OF REORGANIZATION OF STEPHANIE AND COLTON OSBORN

Stockmens Bank (the "Bank") by and through its attorneys, John O'Brien of Spencer Fane LLP, for its Objection To Second Amended Plan Of Reorganization Of Stephanie And Colton Osborn states as follows:

### I. PRELIMINARY STATEMENT

1. The Debtors sold approximately $1,000,000 of Bank equipment collateral out of trust; collected the proceeds therefrom; did not turn over the proceeds to the Bank; deposited the proceeds in a deposit account with another bank (First Interstate Bank-Omaha); then spent the money. The Debtors concealed their actions. The Debtor's acts were discovered only after this Court ordered the Debtors to respond to the Bank's discovery.

1

DE 9855250.1

2. According to auctioneers and equipment buyers, the Debtors misrepresented that they owned the Bank's equipment Collateral free of liens. The Debtors thrust litigation and risk of loss on the Bank, auctioneers and farmers who bought the Bank's equipment collateral out of trust. The Debtor's wrongful acts have injured a lot of victims.

3. This Chapter 12 case has been pending for over a year without progress or creditor support.

4. The Debtor's most recent Plan proposes to sell to the Debtor's parents a 6 acre parcel pledged to the Bank and to pay the Bank $553,050. This of course interests the Bank, even though it will not pay the Bank in full, and will leave the Bank a creditor under the Plan.

5. However, there is no indication that the Debtors' parents are ready, willing and able to buy the Bank's Real Property Collateral. The timing of any sale is not specified. Apparently, a sales contract has not been signed. Moreover, any sale is best conducted under Section 363, and not pursuant to a Plan that faces creditor opposition and may not be confirmed. The Debtor's approach invites delay and confusion without finality.

6. Part of the Bank's objection could be resolved if the Debtors completed a sale of the Bank's Real Property Collateral under Section 363 prior to a confirmation hearing. The Bank has discussed this with the Debtors' counsel. However, no sales contract has been signed and no Section 363 motion has been filed.

7. Therefore, the case remains stalled. The Bank opposes the new Plan which is not feasible and invites more confusion and delay.

II. THE BANK'S CLAIM.

8. On or about April 20, 2020 the Debtor executed and delivered to the Bank a promissory note in the original principal amount of $125,000 (the "$125,000 Note"). As of the

March 8, 2024 Petition Date the $125,000 Note had an unpaid balance of $109,786.58 plus continuing interest at the default rate of 45% per annum.

9. On or about April 8, 2021 the Debtor executed and delivered to the Bank a promissory note in the original principal amount of $705,500 (the "$705,500 Note"). As of the March 8, 2024 Petition Date the $705,500 Note had an unpaid balance of $556,579.31 plus interest at the default rate of 45%.

10. The $125,000 Note and the $705,500 Note (collectively, the "Notes") were the product of earlier problem loans and a loan workout.

11. The Notes and related security documents include attorney fee, lender expenditure and other reimbursement obligations (the "Reimbursables").

12. The Notes required annual payments on December 15 of each year. The Debtor did not make any part of the payments due on December 15, 2023. The Notes have been in default for over 450 days. The Debtor has not made any payments to the Bank for over 800 days.

13. The Debtor asserts, and the Bank concurs that the Notes are fully secured.

14. Copies of the Notes and the Bank's security documents are further described in, and are attached to the Bank's proofs of claim and to the Bank's Motion For Relief From Stay filed at Doc. #157.

III. COLLATERAL CONVERSION ISSUES PREVENT A WORKABLE PLAN.

15. FarmCo has alleged that the Debtor sold crop year 2023 farm products out of trust to Kam Ag Services, LLC ("Kam"). FarmCo has pressured the Debtor through ongoing extensions of time to file non-dischargeability litigation.

16. On February 2, 2024 FarmCo sued Kam in the District Court of Lincoln County for collateral conversion, Case No. D15C1240000047.

17. For its part, Kam has sued the Debtors for non-dischargeability because the Debtor did not turn over farm product proceeds to FarmCo.

18. It appears established that the Debtors sold FarmCo's collateral out of trust.

19. The Debtors also sold Bank Equipment Collateral out of trust.

20. The primary thrust of the Debtor's plan deals with mitigating the consequences of wrongdoing, and not to sustain a family farming operation.

### IV.   THE PLAN'S TREATMENT OF THE BANK'S CLAIM.

21. The Plan classifies the Bank's claim as a fully secured claim. The Plan designates the Bank's claim as the Class 14 Claim. Although the Claim is fully secured the Plan does not propose to pay any post-petition pendency interest as required by Section 506(b). The Plan proposes to pay the Bank $553,053 from a real estate sale and the balance over 7 years at a variable rate of interest equal to the 20 year Treasury Rate plus 2% (stated to currently be 6.21%).

22. The Plan does not state the date of the first or future payments to the Bank.

### V.   BANK SPECIFIC OBJECTIONS TO THE PLAN.

23. The Bank has not accepted the Plan.

24. The Debtor has not agreed to surrender the Bank's Collateral to the Bank.

25. The Debtor's Plan provides no assurance of a real estate sale to the Debtor's parents to partially pay the Bank.

26. The Plan does not propose to cure the Debtor's defaults to the Bank within a reasonable period of time.

27. The Plan does not fully pay the Bank's fully secured claim because the Plan omits to pay the Bank any interest or reimbursables for the period between the March 8, 2024 Petition Date and the Effective Date of the Plan. Therefore, the Plan fails to comply with 11 U.S.C.

Section 1225(a)(5). The Bank's objections to the Debtors' earlier plan described this omission. The Debtor's newest plan repeats the omission.

28. The proposed interest rate to be paid to the Bank is not adequate under Till or this Court's guidelines. The Wall Street Journal rate plus 2% works out to 9.5%.

29. The Debtor has disobeyed the Court's Order and discovery obligations to the Bank.

30. The Debtor sold the Bank's equipment collateral out of trust and unlawfully converted the proceeds therefrom. Thereafter, the Debtor tried to conceal wrongdoing by disobeying the Court's order to respond to the Bank's written discovery.

31. Article VIII, Section B of the Plan appears to prohibit creditors from continuing their financing statements during the Plan. Chaos will ensue during the eventual post-dismissal or conversion liquidation process if financing statements lapse because secured creditors were not permitted to continue their financing statements in the ordinary course prior to lapse dates.

32. The Bank objects to Section II(B)(1) of the Plan requiring the Bank to apply Plan payments first to principal. Such application reduces the effective rate of interest on the Bank's claim below the Till rate and the rate approved by this Court. Repayments should be applied first to reimbursable expenses, charges, interest, then to principal.

33. The Plan does not comply with 11 U.S.C. § 1222(a)(3) because it allows other equipment lenders higher rates of interest on equipment loans than the Plan proposes to pay to the Bank.

34. The Plan should expressly prohibit the Debtor from selling any Bank Collateral without the written consent of the Bank.

35. The Plan should provide that in the event the Debtor sells any of the Bank's Collateral then the proceeds shall be applied as a prepayment towards the final Plan payment owed

to the Bank. Absent this provision the Debtor could sell all of the Bank's Collateral out of trust to pay FarmCo, the Debtor's parents, or other creditors who the Debtor prefers, and leave the Bank wholly unsecured upon dismissal or conversion to Chapter 7.

36. The Plan inappropriately places the burden on the Bank to prosecute its Section 506(b) claim for post-petition interest and reimbursables which already are the subject of the Bank's proofs of claim to which the Debtor has not objected. The Bank's Section 506(b) claims should be deemed allowed unless the Debtor files a timely objection to the Bank's proof of claim.

37. The Plan period is three years. The Plan does not propose to cure the Debtors' default with the Bank. The Plan proposes to pay the Bank's claim over 7 years. For the Plan to be feasible the Debtor must show that it has an exit lender lined up to refinance the Debtor within three years of the Effective Date of the Plan. The Debtor has not and cannot make this showing.

38. Section II (C)(7) of the Plan states that "subject to the Bankruptcy Rules" Plan payments shall be made to the creditors at the address stated in the applicable proof of claim. This should be clarified to state that Plan payments shall be paid directly to the Bank.

39. The Plan should require the Debtor to provide the Bank with proof of insurance on its Collateral and that failure to do so shall constitute a Plan default entitling the Bank to relief from stay.

40. The Plan should require the Debtor to pay real estate taxes on the Bank's Real Property Collateral on or before the date that such taxes are due, and that failure to do so shall constitute a Plan default entitling the Bank to relief from stay. [This objection would be moot if the Debtor completes a Section 363 sale prior to the confirmation hearing.]

41. The Bank objects to Article IX of the Plan exonerating the Debtor because the Debtor sold the Bank's Collateral out of trust.

## VI. ADDITIONAL AND GENERAL OBJECTIONS TO THE PLAN.

42. The Plan assumes that the Debtor will successfully start and establish a new custom farming business. However, the Debtor has not lined up custom contracts to support Plan payments.

43. The Debtor's landlord, Meadowlark, has terminated its leases with the Debtor.

44. The Debtor does not have a commitment for an operating loan for 2025 or future years. Without an operating lender or established trade credit the Debtor cannot produce a 2025 crop or establish a new line of business for custom work. So again the Plan is not feasible.

45. The Debtor has not signed the Plan.

46. The Plan is not proposed in good faith. It prefers satisfying nondischargeability claims early in the Plan while imposing the risk of business failure on creditors who have not brought nondischargeability claims.

47. The Plan does not comply with 11 U.S.C. 1222(a)(3) and prefers and unfairly discriminates in favor of FarmCo by proposing to pay FarmCo $650,000 plus interest on September 30, 2025 even though it appears that FarmCo's claim will be unsecured at that time.

48. The Debtor will not be able to make the payments under the Plan, and the Plan is not feasible. The projected income is speculative, and the projected expenses are not realistic.

49. The Plan does not address FSA payments.

50. Several creditors have motions for relief from stay pending. The Plan does not address what happens if any of those motions are granted.

51. The Bank reserves the right to supplement its objections as additional information becomes available to the Bank.

WHEREFORE, Stockmens Bank submits its Objection To The Second Amended Plan.

DATED March 17, 2025.

DE 9855250.1

Respectfully submitted,

SPENCER FANE LLP

*/s/John O'Brien*
John O'Brien  #15183
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Phone: (303) 839-3800
Fax: (303) 839-3838
Email:  jobrien@spencerfane.com

Attorneys for Stockmens Bank

8

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on March 17, 2025 I served via CM/ECF system an electronic copy of the foregoing on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed. R. Bankr. P. and the L.B.R. at the following addresses:

| | |
|---|---|
| Andrew R. Biehl | abiehl@walentineotoole.com |
| Benjamin J. Court | Benjamin.court@stinson.com |
| Bradley D. Holbrook | bradh@jacobsenorr.com |
| Brandon R. Tomjack | btomjack@bairdholm.com |
| Brenda K. Smith | bsmith@ddlawgroup.com |
| Brian J. Koenig | Brian.koenig@koleyjessen.com |
| Craig A. Knickrehm | cknickrehm@walentineotoole.com |
| David J. Koukol | dkoukol@lifelonglawyers.com |
| Donald A. Garrell | dgarrell@jacobsenorr.com |
| James A. Overcash | trustee@woodsaitken.com |
| Jerry L. Jensen | Ustpregion13.om.ecf@usdoj.gov |
| Mathew D. Pederson | matt@pedersonlawoffice.net |
| Michael J. Whaley | mwhaley@clinewilliams.com |
| Michael R. Snyder | msnyder@snyderandhilliard.com |
| Patrick Raymond Turner | pturner@turnerlegalomaha.com |
| Richard P. Garden, Jr. | rgarden@clinewilliams.com |
| Tad Ruliffson | truliffson@outdoorbank.com |

    The undersigned further certifies that on March 17, 2025 a true and correct copy of the foregoing was served to the following by first class, postage prepaid U.S. Mail:

Stephanie Osborn
42720 Road 763
Cozad, NE  69130

Colton Osborn
42720 Road 763
Cozad, NE  69130

C&S Ag, LLC
42720 Road 763
Cozad, NE  69130

C&S Organics, LLC
42720 Road 763
Cozad, NE  69130

Patrick Raymond Turner
Turner Legal Group, LLC
139 S. 144th Street #665
Omaha, NE  88010

James A. Overcash
James A. Overcash, Trustee
301 South 13th Street, Ste 500
Woods Aitken LLP
Lincoln, NE  68508

    */s/John O'Brien*
    John O'Brien

DE 9855250.1